NELSON P. COHEN
United States Attorney

ANDREA STEWARD
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska  99513-7567
Phone: 907-271-5071
Fax: 907-271-1500
Email: aunnie.steward@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No.  3:93 cr 127 (HRH) (JDR) |
| | ) |
| Plaintiff, | ) GOVERNMENT'S RESPONSE IN |
| | ) OPPOSITION TO DEFENDANT's |
| | ) § 2255 MOTION TO VACATE |
| SENTENCE | ) |
| v. | ) |
| | ) |
| JAIME ERNEST MORENO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

COMES NOW THE UNITED STATES OF AMERICA and opposes

defendant's Motion to Vacate Sentence at Docket No. 213 as well as his Amended

Motion at Docket No. 224, made pursuant to Title 28 United States Code Section 2255.

## I.    INTRODUCTION

This case has a very long procedural history.  Jaime Moreno has now been sentenced to the same 235-month sentence three times by U.S. District Court Judge H. Russell Holland following multiple appeals as set out below.  The following facts and procedural history are from the appellate record in this case and the transcript filed as Exhibit A to defendant's Motion.  The file is on request from Seattle where the clerk's office has sent it for storage.  The United States will provide the additional relevant documents/citations once they become available.

1.    <u>Moreno's Arrest, Initial Guilty Plea, First Sentencing and First Appeal</u>

Following his arrest, Moreno entered into plea negotiations, and on March 14, 1994, he pled guilty.  Before sentencing, however, Moreno fled.  On May 6, 1999, Moreno was arrested in Dallas, Texas, and was returned to Alaska for sentencing.

On October 20, 1999, Moreno was sentenced to 235 months in prison for his role in the conspiracy to distribute cocaine.  The sentence was at the bottom of the sentencing range, and the court observed:

> Mr. Moreno, there's only one reason why I've given you the
> minimum sentence that's available to me under the guidelines in this
> case, and that's because of your age.  After you serve about 20 years,
> which 235 months is almost 20 years, your going to be about 59 years
> old.  And I think that's enough.

Moreno appealed his conviction, and the Ninth Circuit reversed because the

district court had failed to set forth the nature of the conspiracy charge during the

plea colloquy; the case was returned for trial.  United States v. Moreno, 2001 WL

1382025 (9th Cir. 2001) (Moreno I), Ex. A.

    2.  Moreno's Trial and Second Sentencing

At trial, Moreno took the stand and admitted his involvement in the sale of

the two kilograms of cocaine, but denied his participation in any conspiracy.  The

jury returned a special verdict finding Moreno guilty of a conspiracy involving

more than 500 grams but less than five kilograms of cocaine.

At the second sentencing hearing, which began in July 2002, to establish the

quantity of drugs that should be attributed to Moreno for purposes of sentencing,

the government introduced evidence of additional drug dealing by Moreno, in the

form of testimony by FBI Special Agent Lou Ann Henderson.  Agent Henderson

had interviewed both Moreno and his coconspirator Dario Echavarria in 1993,

after Moreno's initial arrest and guilty plea.  Moreno objected to the drug amount

for which he was being held responsible, challenging the credibility of the agent's

testimony and arguing that because of the special verdict, he should not be sentenced for a drug amount beyond five kilograms.

On August 29, 2002, Moreno was sentenced for the second time. The district court rejected Moreno's arguments, finding that the agent's account of her interviews with him and his co-conspirator Echavarria was credible, that the special verdict did not limit Moreno's responsibility for purposes of attribution at sentencing, and that the additional drug sales Moreno had described to Agent Henderson were part of the same course of conduct as the conspiracy conviction.

As described above, following his arrest in 1993, Moreno had reached a plea agreement, pursuant to which he agreed to plead guilty and continue to cooperate. During Moreno's ensuing interviews with Agent Henderson, he acknowledged numerous cocaine and marijuana transactions during the two years prior to his arrest, amounting to at least 28 kilograms of cocaine and 20 pounds of marijuana during the period of April 1991 until his arrest. Agent Henderson, who debriefed both Moreno and Echavarria, took extensive notes during her interviews, and as a result was able to testify, even several years later, in detail as to the information they had provided. Because Moreno had breached his plea agreement when he fled, the information that he had provided at his previous debriefings was available to be used against him in sentencing.

-4-

The evidence introduced at the second sentencing hearing made it clear that Moreno, in the words of the district court, was "dealing in kilogram quantities of cocaine more or less continuously from April of 1991 until a time after the count of conviction.  It was a continuing course of conduct."  Docket No. 213, Ex. A at 8.

Specifically, Moreno himself had acknowledged, starting in April 1991, obtaining 21 kilograms of cocaine from Gustavo Velez Montoya, the original supplier for the conspiracy until Velez's arrest in 1992, and five kilograms from Echavarria, together with the two kilograms involved in the charges in this case. Id. at 7.  In addition, Moreno had acknowledged obtaining some 20 pounds of marijuana from Echavarria.  Id.  The district court found that Moreno's account of his own drug-dealing was factual and credible, Id. at 6, that much of it was corroborated by Echavarria's own account of his drug-dealing relationship with Moreno, Id., and that Agent Henderson's account of her interviews with the two of them was consistent and credible.  Id.  The total quantity of drugs attributed to Moreno gave him a base offense level of 34.  Id. at 8.  The district court added a two level upward adjustment as a result of his previous flight, for a total offense level of 36.  Id. at 8–9.

The district court rejected a defense request for a downward adjustment for acceptance of responsibility. Although the court recognized that Moreno had throughout acknowledged his role in the two-kilogram transfer to Echavarria, the court pointed out that it would be unusual to conclude that a defendant who went to trial ought nevertheless qualify for acceptance of responsibility. Id. at 15.

Moreno's insistence that he was not guilty of the conspiracy with which he was charged foreclosed a conclusion that he had accepted responsibility. Indeed, the court concluded that it was reasonable to conclude that Moreno was simply hoping that as a result of the long passage of time while he was a fugitive, the quality of the government's case would have weakened to the point where he might well be acquitted. Id. at 16. The court concluded that this does not amount to acceptance of responsibility. Based on these determinations, pursuant to the then-mandatory Sentencing Guidelines, Moreno was again sentenced to 235 months' imprisonment. Id. at 22.

3.    Moreno's Second Appeal

Moreno appealed, challenging both his conviction and his sentence. With respect to his sentence, he claimed, that he was entitled to a reduction in his sentence based on acceptance of responsibility, and that his pattern of drug dealing during the months leading up to his participation in the conspiracy should not be

considered relevant conduct.  Moreno also raised a constitutional challenge to the

consideration of relevant conduct based on Apprendi.  On March 12, 2004 (before

Blakely v. Washington, ___ U.S. ___, 124 S. Ct. 2531(2004) or Booker were

decided), in an unpublished opinion, the Ninth Circuit affirmed both his

conviction and his sentence.  United States v. Moreno, 93 Fed.Appx. 131 (2004)

(Judges O'Scannlain, Rymer and Bybee) (Moreno II), Ex. B.

        Following Ninth Circuit's decision, Moreno filed a petition for a writ of

certiorari with the Supreme Court.  Based on its decision in Booker, on January

24, 2005, the Supreme Court vacated the Court of Appeals decision, and remanded

for further consideration.  Moreno v. United States, ___ U.S. ___, 125 S. Ct. 1050

(2005).  On remand, on March 3, 2005, the Ninth Circuit once again affirmed

Moreno's conviction, and remanded to the district court for re-sentencing in light

of Booker.  United States v. Moreno, 125 Fed.Appx. 801 (9th Cir. 2005)

(unpublished opinion), Ex. C.

        4.    Moreno's Third Sentencing

        Following preparation of a new Presentence Report and a new sentencing

hearing, on May 11, 2005, the district court for the third time sentenced Moreno to

235 months in prison for his role in the cocaine distribution conspiracy.  The

district court based its findings of fact on the full record in this case, including the trial and the previous sentencing hearings.

The new Presentence Report calculated Moreno's previous drug-dealing for purposes of determining relevant conduct based on the information provided in the debriefing of Echavarria describing his deals with Moreno, and recommended that Moreno be found responsible for relevant conduct of over 3000 kilograms of equivalent marijuana. At the sentencing hearing, Moreno took the stand and once again challenged Agent Henderson's veracity, claiming that her notes were fabricated and that he had never been involved in any drug-dealing with any of the other participants in this conspiracy other than the two kilograms involved in this case.

The court did not credit Moreno's testimony. Noting the PSR's finding that Moreno was responsible for over 3000 kilograms of equivalent marijuana based on the information from Echavarria, the district court observed that in the previous sentencing proceeding, it had relied on Moreno's own statements, as testified to by Agent Henderson, to find him responsible for considerably more. The court re-adopted its previous findings with respect to the quantity of drugs for which Moreno was responsible. However, both the amount recommended in the PSR and the amount previously found by the district court resulted in the same base

offense level of 34.  There was no objection to a two-level increase based on

Moreno's obstruction of justice as a result of his flight, and the district court added

that enhancement.

Moreno requested that the district court find him a minimal participant in

the conspiracy, but the district court denied that request.  The court pointed out

that no drug quantities were being attributed to him for sentencing purposes except

for those transactions in which he personally participated:

> Mr. Moreno was directly involved, hands on involved.  This is not a
> situation where he is being upgraded as far as his offense level or
> anything else on the basis of transactions that other people who were
> part of the conspiracy, but not Moreno, took part in.  Because the
> testimony was that Mr. Moreno had his hands on all of the drugs that
> we're talking about, he's not a minimal nor a minor participant either.
> He's a direct, full participant in what was going on.  No adjustment
> for role in the offense.

With respect to acceptance of responsibility, the district court pointed out that

Moreno had the opportunity to cooperate, and declined to do so.  Because Moreno

refused to acknowledge his role in the conspiracy, "the Government was put to its

proof, and that is not the stuff of which acceptance of responsibility is made."

Finally, Moreno's criminal history category was recalculated in the new

PSR.  In the second sentencing, Moreno's criminal history category had been

calculated as a category IV, in part because of additions because Moreno was on

probation at the time of the offense and because the offense was committed within

two years of a prior offense.  At the time, the district court had concluded that this

overstated the seriousness of Moreno's criminal history, and departed downward

by subtracting one point, which brought his criminal history category down to

level III. In this third sentencing, the PSR identified an error in Moreno's prior

criminal history calculation, and recalculated it as category III, based on his prior

two convictions for theft and one conviction for receiving stolen property, together

with the fact that he entered into the charged conspiracy while on probation.

Nevertheless, Moreno requested a further downward departure to category I,

arguing that the previous offenses were relatively minor, and that because of his

age (42), Moreno was unlikely to offend again in the future.  The district court

denied Moreno's request, finding that the PSR's recalculation had resolved its

earlier concerns with the criminal history calculation, and noting that even if it

were to grant the same one-point departure it had granted previously (bringing

total criminal history points down from five to four), Moreno's criminal history

level would still be category III.  As a result of these findings and calculations, the

district court concluded that Moreno's offense level was 36, and that his criminal

history level was category III, so that the Guidelines range was 235 to 293 months'

imprisonment.

The court then expressly recognized both that the Guidelines were now advisory, pursuant to <u>Booker</u>, and that it had an obligation to consider all the section 3553 sentencing factors.  Expressing its disappointment in Moreno's allocution and his lack of contrition, and finding that his attacks on Agent Henderson's previous testimony about his statements concerning his prior drug dealing were not credible, the district court declared that Moreno had "perjured himself" at the sentencing hearing.  The district court concluded that there was no reason to sentence Moreno outside the Guideline range:  "I'm satisfied that the guidelines adequately and properly guide and advise me in this case."   As a result, the district court reimposed its previous sentence of 235 months' imprisonment, at the bottom of the Guideline range applicable to this case.

5.   <u>Moreno's Third Appeal</u>

Moreno then appealed this sentence.   Moreno once again challenged as he did in <u>Moreno II</u>, the district court's conclusion that his admitted drug dealing in the months leading up to his participation in the charged conspiracy should be considered as relevant conduct, and the district court's refusal to grant him a downward adjustment for acceptance of responsibility.  Both of these issues had already been resolved against him by the Ninth Circuit in <u>Moreno II</u>, although its ruling was subsequently vacated on other grounds.  In addition, Moreno

challenged the district court's refusal to find him a minimal participant in the conduct for which he was sentenced.  Finally, Moreno challenged the district court's refusal to grant a downward departure in his criminal history category.

The Ninth Circuit held the following in an unpublished opinion:  1) that the additional drug sales based on Moreno's own admissions were properly considered relevant conduct; 2) that the defendant did not qualify for acceptance of responsibility; 3) that the district court's finding that Moreno was not a minimal participant was not clearly erroneous; and 4) there was no jurisdiction for the Ninth Circuit to review the district court's decision to not depart downward. United States v. Moreno, 170 Fed. Appx. 490, 2006 WL 616245 (9th Cir. 2006) (Moreno III), Ex. D.

Now that the defendant has exhausted his direct appeals he is pursuing a collateral attack on his sentence.  The defendant alleges four grounds as a basis for relief and all are described in terms of ineffective assistance of counsel for the conduct of three different attorneys through the plea, sentencing, and appeal phases of his case.  The defendant has, however, failed to allege facts sufficient to make a claim of ineffective assistance of counsel and thus the Motion to Vacate Sentence should be denied.

### III.   ARGUMENT

A defendant claiming ineffective assistance of counsel must allege specific facts which, if proved, would demonstrate that (1) counsel's actions were "outside the wide range of professionally competent assistance," and (2) "There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Strickland v. Washington, 466 U.S. 668, 687–690 (1984).  A defendant fails to state a claim for ineffective assistance of counsel if the defendant fails to allege facts sufficient to meet either the performance or prejudice standard so that the district court may summarily dismiss the claims.  Here, Moreno has failed to allege facts sufficient to support a claim for ineffective assistance of counsel and thus his Motion to Vacate Sentence should be denied.

The defendant alleges the following four grounds for relief based on ineffective assistance of counsel:

1.   Scott Dattan—defendant's attorney at trial after the defendant backed out of the plea agreement—failed to adequately advise him regarding the option to plead guilty and have an open sentencing.

2.   Mitchel Schapira—defendant's attorney at sentencing—failed to challenge the use of the defendant's own statements by the court at sentencing to determine relevant conduct based on the fact that the statements were made pursuant to a debriefing following the initial plea agreement without counsel for the defendant present.  This

ground is supplemented by the filing at Docket No. 224 by defendant's counsel titled the Amended Motion.

3.    Mitchel Schapira—defendant's attorney at sentencing—failed to challenge the quantity of drugs found by the court as being in violation of Apprendi because it was an amount greater than what the jury found him guilty.

4.    Hugh Fleischer—defendant's attorney on appeal—failed to challenge the sentence for reasonableness pursuant to Ameline and Booker.

The United States will address each of these grounds in turn.

**1.    Advice regarding open sentencing.**

The defendant's first ground alleging that his attorney Scott Dattan failed to adequately advise him as to the option of pleading guilty and have an open sentencing is undermined factually by the record.  In the transcript from the sentencing of August 29, 2002—marked as Exhibit A to defendant's Motion at Docket No. 213—defendant's allocution indicates that he was aware that he could plead guilty and have an open sentence.  He stated that he knew the U.S. Attorney's office was not going to offer a deal and then stated:  "So that's why I decided to go to trial."  The defendant also stated during allocution that his attorney had explained that "'they're not going to make you a deal unless you get a deal for five to 40 years, an open sentence.'  So I had no choice."  Docket No. 213, Ex. A at 20.  Moreover, the court noted that it appeared the defendant's motive for

-14-

going to trial was "simply to put the government to the test to see whether or not they still had the evidence that would convict Mr. Moreno and, as it turns out, they did." Id. at 16.

Additionally, Moreno alleges prejudice in that if he had pled guilty he would have received a departure for acceptance of responsibility. This is not true, however, because where as here a defendant has been given two points for obstruction of justice, acceptance of responsibility is not ordinarily awarded. U.S.S.G. § 3E1.1 Ap. Note 4.

Moreno's sentence was enhanced two points for obstruction for the defendant's flight after his first guilty plea and subsequent years as a fugitive as well as his lies to law enforcement once he was apprehended. The defendant does not dispute the application of the enhancement for obstruction. Thus, even if he had pled guilty instead of going to trial he would not have earned a reduction for acceptance of responsibility. For all these reasons, Moreno's counsel did not perform outside the wide range of professionally competent assistance and, moreover, there is not a reasonable probability that the outcome would have been different even if the defendant had pled guilty rather than go to trial regarding acceptance of responsibility. Thus this ground is insufficient to allege ineffective assistance of counsel.

##### 2.    Use of the defendant's statements to find relevant conduct.

The defendant's second allegation is that it was ineffective assistance of counsel for Mitchel Schapira to fail to challenge the use of the defendant's own statements by the court at sentencing to find relevant conduct.  The defendant says it was a violation of his Sixth Amendment right to counsel to be debriefed following his guilty plea without his attorney present.  The district court, however, noted that the debriefing followed the defendant's plea of guilty pursuant to a plea agreement that anticipated cooperation.  Docket No. 213, Ex. A at 2.  The court made an explicit finding at the sentencing in August 2002 that "it was understood by all that they [the government] would continue without Mr. Scotti [defense attorney] being present."  Id.  The court also found that "The government is entitled to use defendant's admissions in this proceeding . . . because the express terms of the plea agreement which was entered into."  Id.  Moreover, the court found that the defendant's statements were corroborated by his co-conspirator Mr. Echavarria.  Id. at 6.  Thus, there is no prejudice because even discounting the defendant's statements the statements of his co-conspirator provide a basis for the relevant conduct.

In the Amended Motion at Docket No. 224 it is argued that the statements should not have been used against the defendant because they were statements

-16-

covered by Evidence Rule 410(4) and Federal Rule of Criminal Procedure 11(e).
The citations for this proposition in the Amended Motion are dicta in two Fifth
Circuit cases that actually allowed the use of plea bargain statements against the
defendant.  The standard for ineffective assistance of counsel is that "counsel's
actions were 'outside the wide range of professionally competent assistance."
Strickland, 466 U.S. 687–690.  Where the only support for an argument is dicta in
out-out-of-circuit cases, it does not follow that the attorney was ineffective in
failing to make those arguments.

### 3.     Failure to challenge the quantity of drugs.

The defendant alleges that Mitchel Schapira was ineffective because he
failed to challenge the drug quantity at his sentencing because it was not found by
a jury and thus ran afoul of Apprendi.  This argument was previously raised on
appeal and rejected by the Ninth Circuit in Moreno II, but subsequently  vacated
on other grounds.  "Moreno's sentence was below the statutory maximum, so his
argument that the quantity for which he is accountable should have been
determined by the jury is foreclosed by Harris v. United States, 536 U.S. 545,
557–58 (2002)." United States v. Moreno, 93 Fed. Appx. 131, 133 (9th Cir. 2004)
(Unpub.), Ex. B.  Because there is clear legal precedent to the contrary and

because the Ninth Circuit had specifically rejected the claim previously, it was not ineffective assistance of counsel to not raise the issue again.

### 4.    Failure to challenge the sentence for reasonableness.

The defendant alleges that Hugh Fleischer was ineffective for failing to make a reasonableness challenge to his sentence on appeal.  To restate the procedural history; following Ninth Circuits decision in Moreno I, the defendant filed a petition for a writ of certiorari with the Supreme Court.  Based on its decision in Booker, on January 24, 2005, the Supreme Court vacated the Court of Appeals decision, and remanded for further consideration.  Moreno v. United States, ___ U.S. ___, 125 S. Ct. 1050 (2005).  On remand, on March 3, 2005, the Ninth Circuit once again affirmed Moreno's conviction, and remanded to the district court for re-sentencing in light of Booker.  United States v. Moreno, 125 Fed.Appx. 801 (9th Cir. 2005)(unpublished opinion) (Moreno III).

The court then expressly recognized both that the Guidelines were now advisory, pursuant to Booker, and that it had an obligation to consider all the section 3553 sentencing factors.  Expressing its disappointment in Moreno's allocution and its lack of contrition, and finding that his attacks on Agent Henderson's previous testimony about his statements concerning his prior drug dealing were not credible, the district court declared that Moreno had "perjured

-18-

himself" at the sentencing hearing.  The district court concluded that there was no reason to sentence Moreno outside the Guideline range:  "I'm satisfied that the guidelines adequately and properly guide and advise me in this case."  As a result, the district court reimposed its previous sentence of 235 months' imprisonment, at the bottom of the Guideline range applicable to this case.  Further appeal on this issue would not likely produce any different result and thus it does not fall outside the wide range of professionally competent assistance.  Morrison v. Estelle, 981 F.2d 425, 428 (9th Cir.1992) (holding that appellate counsel's failure to raise an issue on appeal does not constitute ineffective assistance of counsel if counsel had "no reasonable likelihood of success" in arguing the issue).

## IV.   CONCLUSION

For all of the reasons provided above the United States respectfully requests that this court recommend that the defendant's Motion to Vacate his Sentence be denied.  The defendant has not shown that the alleged errors of his three different attorneys fell below an objective standard of reasonableness as is required Strickland and, moreover, the defendant has not shown that prejudice resulted from any errors by his attorney.  Thus, the defendant is not entitled to relief for ineffective assistance of counsel pursuant to 28 U.S.C. § 2255.  Because the record

conclusively shows that he is not entitled to relief, the Court should recommend

summary dismissal of his claims.

RESPECTFULLY SUBMITTED this 14th day of March 2008, at

Anchorage, Alaska.


NELSON P. COHEN
United States Attorney

s/ Andrea T. Steward
ANDREA T.  STEWARD
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3668
Fax: (907) 271-1500
E-mail: andrea.steward@usdoj.gov


**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2008
a copy of the foregoing was served
electronically on: G. Blaire McCune


s/ Andrea T. Steward